The last argument for today is in Case No. 23-3, Sampson v. National Board of Examiners. Mr. Burgoyne, whenever you're ready. Great. Thank you, Your Honor. Robert Burgoyne on behalf of National Board of Medical Examiners. Every year, thousands of individuals seek extra testing time and other accommodations on high-stakes standardized tests. Examples include the ACT and SAT exam, the law school admission test, the medical college admission test, state bar exams administered by state supreme courts and state boards of bar examiners, and in this case, the United States Medical Licensing Examination. This appeal involves a single examinee, but it has far broader significance because it presents the question of how the ADA's substantial limitation requirement applies in the context presented by this case. That is a context that arises frequently for testing entities. Individuals who have a lifetime of academic achievement with no accommodations and then in the context of seeking accommodations on a high-stakes exam rely upon diagnostic assessments administered by a professional who they've consulted for the specific purpose of obtaining accommodations. Plaintiff argued below that, quote, the law demands that NBME defer to evaluations from professionals who have evaluated the candidate seeking accommodations. They also argued below that the law demands that NBME not consider academic achievement or performance on other standardized tests in evaluating whether someone is functionally limited by their claimed impairments. Although the district court did not state these propositions in such stark and absolute terms, it clearly relied upon both premises in awarding Mr. Sampson twice as much testing time as other examinees received on the Step 1 exam, a separate testing room. The status is right now of Mr. Sampson's scheduled exam. Is it scheduled? Is he scheduled to take the Step 1 exam? He is, Your Honor. My understanding is he's scheduled to test on or about May 15th. Okay, and if that happens, will this case be moved? It will not be moved, Your Honor, for several reasons. One, when he takes that test, it will take about a month before the two to four weeks before scores get reported. In the initial instance, those scores will be reported only to his medical school. Eventually, however, those scores will have to be reported in the context of seeking licensure. So there will be... Regardless of the result to him, will it not be moved as to, I mean, what relief would it be? You are here on appeal. We are here on appeal from the requirement that we allow him to test with those accommodations. And if that test happens with those accommodations, then what is it that you want us to do? Well, Your Honor, I can tell you in the example, for example, of the Doherty case, which the Fifth Circuit decided. In that case, plaintiff was awarded extra testing time. Tested with accommodations, the Court of Appeals vacated the results on the Step 1 exam. And the scores ended up not getting reported. And Ms. Doherty ended up testing again without extended testing time. It's practically how it played out. And, of course, Mr. Sampson will also have to take Step 2CK as well as Step 3 of the USMLE. And, of course, we want the identical accommodations in that context. Has Mr. Sampson completed all of his academic requirements at Stony Brook? That is unknown to us, Your Honor, because the procedural posture of this case, there was no discovery. So we have no idea what his precise status is. Judge Azarack, because there was an application for a PI in front of Judge Azarack, as to Stony Brook's assertion that because he hadn't completed medical school within, what was it, seven years, that he was to be expelled from school. Had she decided that and decided that he wasn't entitled to the PI, there would be no necessity for this determination, would there? Your Honor, had that case, that PI, been decided first, there would have been no necessity in this case for any motion for a preliminary injunction, because one of two things would have happened. Either the school would have been adjoined to allow him to remain in school, notwithstanding his failure to complete his education in seven years, or it would not have been adjoined and the school would have been allowed to dismiss him. And in either event, no injunction would have been needed here. So we don't know whether the purpose of the exam is for him to accomplish the beginnings of licensure or to continue to attend school, which then may still not necessarily happen, because if Stony Brook were to, she delayed the Stony Brook determination. If the Stony Brook were to succeed with regard to resisting the PI, he could be expelled from the school, notwithstanding the fact that he could take the exam, correct? It is possible Stony Brook will elect to dismiss him, notwithstanding the outcome of this case. Then why would we decide this case? I mean, how does he, how does his irreparable harm close from that, doesn't it? Well, that's been our position from the outset, Your Honor, that it would have been appropriate for the district court to resolve the Stony Brook case first. He will, of course, eventually have to take the STEP exam. Okay. So if he were to take it and pass it or get a score, would that be cast in stone so that if, for example, he didn't complete his studies at Stony Brook but enrolled at a different medical school, he could use the STEP-1 score that he had to satisfy any curricular requirement of passing the STEP-1? If he passes his STEP-1 exam here, he could use that at another institution, Your Honor. So the urgency may be different depending on the resolution of the Stony Brook case, but the ultimate question of whether he's entitled to accommodations if he intends to pursue medical studies come hell or high water, that that issue is going to remain regardless of whether he's doing it at Stony Brook or somewhere else. That is correct, Your Honor. I'd like to shift here quickly, Your Honor, because I see my time. The two issues that really the case centers on are substantial limitation and in that context whether or not he is substantially limited compared to most people in the general population. That's an issue this Court decides de novo, and that's important. We don't think there's any evidence in the record sufficient to support a finding that he is substantially limited compared to most people. The Court got to that conclusion by giving more persuasive weight to the findings of his professional and ignoring largely the findings of five very well-qualified experts that the National Board had relied upon in denying accommodations. In that regard, we note that NBMA is not alone in relying on external professionals, and as a practical matter, you know, there are thousands and thousands of accommodation requests and it's common for state Supreme Courts, state boards, the National Board to rely on external evaluators. In this case, it was reasonable for them to do so, and the record does not establish substantial limitation. Unless there are questions, I'll save my time for rebuttal. Thank you. Thank you, Counsel. You've reserved a couple minutes for Mr. Warner. Good morning. May it please the Court, I'm Charles Wiener, and I represent the appellee Robert Sampson. Mr. Sampson is an extraordinarily gifted medical and business student who currently has a 4.0 grade point average in his business program. He has completed three years of medical school and he is a mere three weeks away from taking the USMLE exam. During his medical school rotations, he demonstrated his exceptional efforts and skills and received accolades from his preceptors. He also developed two life-saving applications for the phone, which he has patents on. He is requesting 100% extended time on the USMLE because he has dyslexia and he has ADHD. Because of his dyslexia and ADHD, it takes him longer to read, it takes him longer to concentrate, it takes him longer to think, it takes him longer to take a standardized exam compared to most people in the general population. Did he get an accommodation on the MCATs? He did not. Did he get an accommodation on the ACTs? He did not have accommodations on those two prior standardized exams. However, as the court noted below, he utilized different testing strategies and military effects and study strategies, studied extra and extended time, utilized a corral of different tutors. I can appreciate that, but his position is that he needs extra time because of his disability. I can appreciate that, but he was able to utilize strategies that did not require extra time with regard to other standardized tests in which he performed quite well. I would submit that he utilized these strategies. However, there was testimony presented during the hearing that in addition to utilizing these strategies, he had difficulty completing the exams. And as he climbs the academic ladder, it becomes more difficult, and his disability impacts him even more significantly, particularly with respect to the USMLE. Would we measure his disability in the context of his peers or medical school or in the general public? In the general public. Okay. Because his reading is slower, his concentration is slowed, his thinking is slowed. It's the general public. I would also point out that he did receive, and this was significant for the court, he did receive accommodations on the shelf exams, which are prepared by the NBME and administered to students at his medical school. Mr. Sampson is not going to finish this program in seven years, right? So he needs to win the Stony Brook litigation in order to prevent, in order not to be dismissed. Absolutely. Yes. So then what's irreparable harm if you are not, if Mr. Sampson were not given the accommodation here? So the irreparable harm, as the court has stated, is, and there's several avenues of it. First, that the medical school was looking to kick him out because he didn't comply with the seven-year requirement. In addition to which, the medical school was not letting him to proceed on to his fourth year of medical school because he hadn't taken the USMLE Step 1. He took a three and a half year break in between. I mean, he took three semesters and then there's a hiatus. He left the medical school and pursued other things for a period of time, right? Yes. That's not a function of his disability, is it? Some of it was because he needed accommodations on the USMLE Step 1. So because, for him to take the exam. Well, so whatever happens with respect to those, though, those don't depend on his performance on this exam. Those depend on the litigation with Stony Brook. I'm sorry, Your Honor, I didn't understand. Whether he's dismissed for failure to complete the program in seven years, that has nothing to do with his performance on this Step 1 exam, does it? It does. His school requires that he pass the Step 1 and pass the Step 2 in order to receive his degree. But if he doesn't finish in seven years, it doesn't matter if he passes. I guess that's my question. Yes, we would need to have an injunction against Stony Brook in order to have the status quo maintained. I think this goes back to what Judge West was asking about earlier. This seems to be backwards. I don't know what the harm is. What is decided here on appeal won't matter. What matters is what happens in the Stony Brook litigation. And then if you win that, then maybe at that point the Step 1 result matters as to whether he can continue. I submit it does matter because if we proceed with this in accordance with the judge's calendar, and it's Judge Azarack's discretion how she wishes to handle her calendar. But the NBME- But if he loses to Stony Brook, it doesn't matter whether he passes the exam or not. Is the outcome of the exam likely to affect the court's analysis in the Stony Brook case? I think it does. If he gets his accommodations and he passes the exam, does that dramatically increase the likelihood that he's going to prevail in the Stony Brook case? I would submit it does. Did she tell us that? Did she write that? It's not in the opinion, no. Okay, so we don't know that. No. But in terms of him passing the exam, if he passes the exam, he, as your Honor had noted, he may be able to utilize that to go to another medical school. His current medical school- But his irreparable harm is its correlation to his continuation at Stony Brook. It is. And yet we know that Stony Brook's reason for expelling him is not passing this exam. It's not completing his studies in seven years. That's not the only reason. And this is why we believe that it is important to proceed with this hearing and that this is irreparable harm. The irreparable harm was, one, not meeting the seven years, and secondly, that he needed to take and pass the USMLE Step 1 in order to start his fourth year of medical school. So there is still irreparable harm, and that irreparable harm is he needs to take and pass the exam in order to start his fourth year of medical school. So you've been in this sort of loggerheads where he can't go on with medical school without having taken the exam, but meanwhile the clock is ticking towards his seven years. So there was a considerable delay before once that happened, and I'm not going back to the requests years ago. I'm talking about once you got to that stage. Why weren't you in court sooner, and how did that relate to the disability? So in terms of the present case, Mr. Sampson had applied in 2022 for accommodations for the USMLE, and the NBME denied those accommodations in June of 2022. But why didn't he apply? Is that when he finished his third year and couldn't go on? Was it at the end of 2022? No, it was after that, yes. When did he hit the point where his ability to continue to advance in the medical program was inhibited by his not having taken and passed Step 1? Well, it was a bit of a moving target from Stony Brook's point of view, but what we had alleged in the complaint in the Stony Brook case is that it appeared that in August of 2022, which was the time that we had filed the complaint, was when he was going to be dismissed from that program. No, I didn't ask when they indicated he was going to be dismissed. I asked when he hit a point in his training where he couldn't continue his clinical rotations because he hadn't yet passed Step 1. Nobody's threatened to terminate him as a student, but at what point did this come to a head? It was a bit of, as I said, it's a bit of a moving target from Stony Brook, but we believe that it was in August of 2022. And this isn't even about Stony Brook's position, right? Yes. This is about when, is it you can't do your fourth year until you've completed Step 1? So that had changed as a policy, as noted in the Stony Brook case. Originally, most students, and this was Stony Brook's policy, to take it at the end of their second year before they start their clinical rotations. That had been liberalized pursuant to policies at Stony Brook to allow students coming to the end of their third year to do it. So Mr. Sampson is at the end of his third year. When did he first get to the end of his third year? I think it was in 2020. Thank you. I appreciate it. I see as my time is coming to an end. Every person who has met Mr. Sampson has concluded that he is a person with a disability. We're talking about his teachers, his school administrators, the disability resource managers at his medical school, tutors, learning specialists, including a learning specialist who worked very closely with Mr. Sampson at his medical school, his evaluators, and his physician. Even Judge Azarack had concluded that he is a person with a disability. We are three weeks away from Mr. Sampson's administration of the USMLE Step 1. To remove this accommodation three weeks from taking this exam would not only be unfair, it would put Mr. Sampson at a distinct disadvantage. Based on the district court's opinion, he has been studying for these past few weeks to take the USMLE Step 1 based on having 100% extended time. It would be a distinct disadvantage to take that away from him. In addition to which, throughout his medical school, he has received 100% extended time. He's accustomed to receiving 100% extended time, particularly on MBME's own shelf exams. We request that this court maintain the order from the district court and affirm. Thank you for your consideration. Thank you. Thank you, Your Honor. Starting at the end there is the most recent point. The fact that he may well be accustomed to testing with extra time does not establish that he is legally entitled to extra testing time. As this court noted in Powell, the interests at stake when someone seeks accommodations are not limited to those of the examinee. If Mr. Sampson gets accommodations that are unwarranted, then that comes at the disadvantage of other examinees and it also compromises the integrity of the scores. Judge Azarack did a lengthy, thorough review of the evidence. She explained why she credited some experts over others. She made fact findings about historical facts that you may or may not agree with, but she made them based on the evidence. If we were to reverse, what's the legal problem with her analysis, rather than her failure to give as much weight to your experts as you think she should have? The legal problem, and I think you've covered well the irreparable harm issue, Your Honor, with the delay and all. The legal problem is that at the end of the day, as this court said in the B.C. Mount Vernon case, under the ADA there has to be substantial limitation compared to most people in the general population. So if the court goes through, there's no question it was a thorough opinion. There's no question that she used the phrase substantially limited compared to most people in the general population several times in the opinion. But if you look at the evidence she cites to support that assertion, and if you compare that evidence with the testimony in the five declarations that we offered from experts in the field, what you'll see is there's a fundamental disconnect. The evidence just isn't there supporting the conclusion that he's substantially limited compared to most people in the general population. That's precisely why he was able to score in the 84th percentile when he took the MCAT, the verbal reasoning section. But then Judge Everett cites the federal regs that say when you're trying to figure out whether somebody is substantially limited relative to the population, you don't focus on outcomes, you focus on the limitations that they have in getting there. And so I'm just trying to get, she understands this argument that you're making, it's not a disconnect in the sense that she's oblivious, but explains why in this case your expert's testimony is less persuasive because of its reliance on outcomes and test scores rather than the process that went into generating those. How can we set that aside without making ourselves fact finders? Well, Your Honor, it's not a clearly erroneous standard. You are to step in and make a determination de novo. On this record is Mr. Sampson substantially limited compared to most people in the general population. And our proposition is it is entirely appropriate to look at his performance on other standardized high-stakes tests. It's also appropriate to consider his academic history. And it's, of course, important to consider what his diagnostic reports say. But look at his external evaluator. She gave extra credit to Dr. Wasserstein by pointing to DOJ guidance that said, well, Dr. Wasserstein, if somebody saw somebody in person, they're getting additional insights. But there's nothing in the ADA that says that's an appropriate outcome. There's nothing in the regs that say you give extra weight to the candidates. She ended up giving extra weight to what Dr. Wasserstein said, even though two other professionals who saw Mr. Sampson in person reached different diagnoses. There is no magic to seeing the candidate in person. And we encourage the court to look at the specific record evidence and ask whether there is, in fact, evidence of substantial limitation compared not to other medical school students, but to most people in the general population. And then a practical question. One of the complexities in terms of our standard review is it's a preliminary disjunction, and that introduces certain requirements around reputable harm, as you've argued. What would your client – let's assume you win and you go back. Does Judge Azzarab then proceed to issue the same decision as a permanent injunction, because you don't need the reputable harm for that, or is there some process that your client's been deprived of because it was a preliminary injunction that would be important for full airing of the issues? Well, Your Honor, typically in these cases there is discovery, and the discovery often relates to, for example, his experience in medical school, his experience in college. What you saw below was a sort of one-sided presentation of evidence by his mother, by a medical school student who he was friends with, none of which got tested in the context of the normal case. Consider whether if this case had come up on a motion for summary judgment by the plaintiff, they almost certainly would have had that motion denied. And consider, conversely, if we had moved for summary judgment, if you look at the Powell decision where NBME was granted summary judgment, even though the plaintiff in that case had a psychologist who identified her as having ADHD and dyslexia, the court said everything here shows that NBME followed its normal procedure. There's nothing indicating that it engaged in discriminatory conduct. Summary judgment for NBME. Thank you, Your Honor. Thank you. Thank you, counsel. We'll take the case under advisement. The last case on the calendar for today is on submission. So that concludes our questions for today. I'll ask the court to deputy judge. Court is adjourned.